REQUESTED BY: Dear Senator DeCamp:
In your letter of April 14, you request an opinion in regards to LB 1004, as amended by Senator Dworak's motion on April 14, 1980 (hereinafter referred to as Dworak Amendment unless otherwise stated). The time limitations imposed by the impending adjournment of the Unicameral makes it very difficult to adequately research and respond to your request, but we will attempt to address your general request to identify any constitutional problems raised by the Dworak Amendment.
LB 1004 provides in section 1, that:
 "It is the intent of the Legislature that in expending the appropriations provided by the Eighty-sixth Legislature, Second Session, 1980, for the period July 1, 1980, to June 30, 1981, specific objectives shall be accomplished. The expectations and desired accomplishments are reflected by agency and by program in sections 2 to 22 of this act."
The Dworak Amendment provides:
 "It is the intent of the Legislature that no funds appropriated to the Department of Personnel for purposes of purchasing a contract of group health insurance or health maintenance agreement pursuant to section 44-1623, Revised Statutes Supplement, 1978, shall be used to provide coverage for abortion, as defined in section 28-326, Revised Statutes Supplement, 1979, in the basic or major medical coverage, except that the insurer may offer individual employees special coverage for abortion and the costs of such coverage shall be borne solely by the employee. This limitation shall not apply to coverage for an abortion which is verified in writing by the attending physician as necessary to prevent the death of the woman or to coverage for medical complications arising from an abortion."
Section 44-1623, R.R.S. 1943, provides:
 "Out of appropriations made for that purpose, the Director of Personnel shall (1) first enter into a contract providing, entirely at state expense, five thousand dollars of basic life insurance protection, and (2) apply the balance to the purchase of a contract of group health insurance to be financed by the state to the extent that appropriations made for that purpose are available and, if necessary, by contributions from each employee. Each such contract shall provide insurance coverage for each employee specified in section 44-1620. Participation in the program of group health insurance shall be optional with the employee."
LB 1004, section 20, would now clearly appear to amend by implication section 44-1623, R.R.S. 1943. See, Ferry v.Ferry, 201 Neb. 595, 271 N.W.2d 450, which holds that where a legislative act is complete in itself, but is repugnant to or in conflict with an earlier statute, it repeals or modifies by implication the latter Act, but only to the extent of repugnancy or conflict. If the Dworak Amendment is enacted into law, the Director of Personnel will be barred after July 1, 1980, from expending any funds for a contract of group insurance entered into by him pursuant to the provisions of section 44-1623, R.R.S. 1943, if said plan of group health insurance includes `abortion coverage'.
Absent its own initiative, there is most certainly no legal requirement that the State of Nebraska provide health care insurance for its employees. However, having elected to do so, 44-1621 to 44-1632, R.R.S. 1943, may it except out abortion coverage? Such action we believe might be challenged on two constitutional grounds: (1) denial of equal protection; and (2) denial of substantive due process via infringement of one's right of privacy (Roe v. Wade,410 U.S. 113, 85 L.Ed.2d 147, 93 S.Ct. 705).
1. We believe that a challenge based upon a violation of the equal protection clause of the Fourteenth Amendment of the United States Constitution, would be without merit in light of the Supreme Court's holding in Maher v. Roe,432 U.S. 464 at 480, where it stated:
 ". . . other medical procedures . . . do not involve the termination of a potential human life. . . ."
Nebraska Chief U.S. District Court Judge, Warren K. Urbom, in reviewing previous abortion legislation enacted by the Unicameral, addressed an equal protection challenge with these words:
 "The applicable standard of review regarding classifications made between abortion and nonabortion surgery is whether the classifications in question are rationally related to a legitimate state interest." Orr v. Thone, et al., U.S. District Court, Nebraska, Case No. CV78-L-289, Slip Opinion issued November 9, 1979, at page 17. (Emphasis added.)
In that same opinion Judge Urbom then recognized thelegitimacy of a state interest in the unborn child.
 "Although the state's interest in the potential life of the fetus is not compelling prior to viability, it is legitimate." Id. Slip Opinion at page 17.
Furthermore, Judge Urbom accepted as valid the proposition that abortion control statutes enacted by the Unicameral (section 28-325, et seq., R.S.Supp., 1979) were not the result of a particular religious viewpoint. He stated:
 "The evidence before the court does not establish that religious considerations theistic or nontheistic were a significant motivating force in the passage of the legislation." Id. Slip Opinion at page 11.
In light of previous abortion legislation and the clear intent expressed by the Legislature, section 28-325, R.S.Supp., 1978, we assume that the Dworak Amendment is based in part on an interest in unborn human life and we do not perceive that fact as raising a constitutional defect in light of Judge Urbom's opinion in Orr v. Thone, supra.
Nor do we believe the Dworak Amendment, which excludes abortion coverage and therefore attaches only to coverage applicable to pregnant women, to amount to invidious discrimination under the equal protection clause of theFourteenth Amendment in light of the Supreme Court's decision inGeduldig v. Aiello, 417 U.S. 484, wherein the Court held that a California disability insurance program that excluded pregnancy coverage did not amount to invidious discrimination. See also, General Electric Co. v. Gilbert,429 U.S. 125.
2. Denial of Substantive Due Process
Again turning to Judge Urbom's decision in Orr v.Thone, we cite the following language as a starting point in examining the test of substantive due process:
 ". . . The right of a women to choose without unduly burdensome interference whether to terminate her pregnancy is fundamental;
 ". . . The permissible degree of interference in that decision by the state depends upon the severity of the technique used by the state and the nature of the state's interest, which interest grows with the duration of the pregnancy;
 ". . . A state may not impose any direct obstacles such as criminal penalties to further its interest in the potential life of a fetus before viability; and
 ". . . A state has no compelling interest in the potential life of the fetus prior to the fetus' viability." Orr v. Thone, supra, Slip Opinion at page 17.
The question which most likely will be presented in any constitutional challenge is: `Does the Dworak Amendment impose any `direct obstacle' to the woman's right to choose to terminate her pregnancy?' The only consistent means of answering this question is to identify, examine and compare those statutes and regulations which the U.S. Supreme Court has found to be or not to be `direct obstacles' to the abortion decision-making process.
In Planned Parenthood of Missouri v. Danforth,428 U.S. 52, the Supreme Court held that the State of Missouri, by requiring parental consent for minors seeking abortions, had placed a direct obstacle in the minors' path to obtaining an abortion. They reaffirmed this holding in Bellottiv. Baird, 47 U.S.L.W. 4969 (1979), while enjoining a Massachusetts statute that required parental notification for minors seeking abortions. Also, in Planned Parenthoodof Missouri v. Danforth, supra, and Planned Parenthood Associationv. Fitzpatrick, 401 F. Supp. 554 (U.S.D.C. E.D. Pa. 1975), affirmed sub nom Franklin v. Fitzpatrick,428 U.S. 901 (1976), the Supreme Court gave approval (without opinion in Fitzpatrick), to the requirement of informed consent. In a trilogy of cases handed down on June 20, 1977, the court held that abortion funding restrictions enacted by the States of Connecticut, Maher v. Roe, supra,
and Pennsylvania, Beal v. Doe, 432 U.S. 438, and the City of St. Louis, Poelker v. Doe, 432 U.S. 519, did not present `direct obstacles' to the abortion decision-making process. In Maher the court held:
 "The Connecticut regulation before us is different in kind from the laws invalidated in our previous abortion decisions. The Connecticut regulation places no obstacles absolute or otherwise in the pregnant woman's path to an abortion. An indigent woman who desires an abortion suffers no disadvantage as a consequence of Connecticut's decision to fund childbirth; she continues as before to be dependent on private sources for the service she desires. The State may have made childbirth a more attractive alternative, thereby influencing the woman's decision, but it has imposed no restriction on access to abortions that was not already there. The indigency that may make it difficult and in some cases, perhaps, impossible for some women to have abortions is neither created nor in any way affected by the Connecticut regulation. We conclude that the Connecticut regulation does not impinge upon the fundamental right recognized in Roe." Maher v. Roe, supra, 432 U.S. at 474.
The court did, however, continually qualify its holding to denial of public funds for `nontherapeutic abortions;' a term yet to be defined by the court, but which is at issue now in a case before the court. McRae v. HEW, Supreme Court Docket 79-1268. We note though that the Dworak Amendment is substantially similar to the action of the City of St. Louis challenged in Poelker v. Doe, where St. Louis City Hospital facilities could not be used for abortion services unless `there was a threat of grave physiological injury or death to the mother.' Poelker v. Doe,432 U.S. at 520. Suffice it to say that we will know more when the Supreme Court issues its decision in McRae v. HEW, supra,
wherein Congress' prohibition against use of federal funds for abortions is at issue.
Re-examining the guidelines set forth by Judge Urbom and the cases of the U.S. Supreme Court examined above, we find some difficulty in saying with any great degree of certainty that the Dworak Amendment will or will not be found to create a direct obstacle to the abortion decision-making process. The courts are still struggling with this newly developing area of law and this fact requires great hesitancy in trying to diagnose the constitutionality of any state abortion regulation. We note though that on the positive side of constitutionality for the Dworak Amendment we most certainly would look to the holdings in Maher v. Roe,supra, Beal v. Doe, supra, and Poelker v. Doe, supra.
Also of importance to our examination of this issue is the existence of a federal statute which is nearly identical to the Dworak Amendment and which is applicable to the state's. That statute provides, in part:
 ". . . This subsection [Pregnancy Discrimination Act, Public Law 95-555, Ninety-fifth Congress, 1978] shall not require an employer to pay for health insurance benefits for abortion, except where the life of the mother would be endangered if the fetus were carried to term, or except where medical complications have arisen from an abortion: Provided, that nothing herein shall preclude an employer from providing abortion benefits or otherwise affect bargaining agreements in regard to abortion." 42 U.S.C. § 2000e
The State of Nebraska is an `employer' for purposes of Title VII of the Civil Rights Act and thus, would not violate federal statutory law in limiting abortion coverage in its basic health insurance program. In forming our opinion to your question, it is of no small importance that the federal statute cited above has not been judicially challenged or enjoined to our knowledge and this fact is stated after careful inquiry and research by our office.
It is thus our opinion that while the questioned amendment by Senator Dworak might be challenged on several constitutional grounds, it would most probably be found to be constitutional.